NOT DESIGNATED FOR PUBLICATION

No. 117,115

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

DONNEY R. PATTON,
a/k/a/ DONNIE RAY HUBBARD,
*Appellant.*

MEMORANDUM OPINION

Appeal from Sedgwick District Court; CHRISTOPHER M. MAGANA, judge. Opinion filed March 9, 2018. Sentence vacated and case remanded with directions.

*Christina M. Kerls*, of Kansas Appellate Defender Office, for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, P.J., SCHROEDER, J., and BURGESS, S.J.

PER CURIAM:  Donney R. Patton pled guilty to aggravated assault and criminal possession of a firearm. The district court granted a downward dispositional departure and sentenced him to 24 months' probation with an underlying prison term of 43 months. Patton was subjected to two "quick dip" sanctions in county jail for probation violations before the State moved for revocation. The district court bypassed additional intermediate sanctions and revoked Patton's probation, citing jeopardy to public safety. Patton timely appealed. Finding that the district court did not sufficiently tie the extensive finding of

1

facts made at the probation revocation hearing to the determination that Patton was a threat to public safety, the revocation of probation must be vacated and the case remanded for reconsideration of the motion to revoke.

FACTUAL AND PROCEDURAL BACKGROUND

Patton pled guilty to aggravated assault and criminal possession of a firearm by a felon. His criminal history score was A. At sentencing in February 2014, the State presented an agreed motion to the district court asking for a downward dispositional departure to probation. The district court reluctantly granted the motion and sentenced Patton to 24 months' probation with an underlying 43-month prison term. The district court imposed as a condition of probation that Patton receive a mental health assessment and medication evaluation from COMCARE and regularly take any prescribed medications. The district court informed Patton that the probation conditions concerning his mental health treatment were the most important.

Patton did not begin serving his probation until late 2015, because he was serving parole holds until that time. Patton later moved to extend the probation term to February 2018, to allow him time to pay court costs of $648.

In February 2016 and June 2016, Patton tested positive for marijuana use and his probation officer imposed "quick dip" jail sanctions each time. In November 2016, the State moved to revoke Patton's probation on grounds that he (1) failed to provide proof of payment toward court costs; (2) tested positive for PCP; (3) tested positive for marijuana; (4) failed to obtain employment; and (5) failed to complete mental health treatment and refused services from COMCARE. At the probation revocation hearing, Patton stipulated to the first four violations and the first half of the fifth, but asserted that he did not refuse services from COMCARE. His counsel explained that Patton did not refuse services but instead, was told that he could leave after he told the counselor honestly that he did not

2

believe he needed services. His counsel also highlighted that Patton never failed to report or to register and always kept his probation officer informed of where he was staying. Patton's counsel requested that the district court impose an intermediate sanction.

At the probation revocation hearing, the district court made approximately 20 factual findings and then revoked Patton's probation under the "public safety" exception to the intermediate sanction requirements. The district court found that at the time of sentencing, Patton was taking medications for anxiety, depression, and antipsychotic medications; that he chose to discontinue use of the medications, without medical advice; and that mental health treatment was central to the district court's award of probation. The court further found that Patton was self-medicating with street drugs at the time of the crime of conviction. The district court found that Patton had used PCP and marijuana during his probation, including shortly after completing an outpatient drug program. Finally, the district court found that this behavior showed that Patton could not or would not deal with his substance abuse issues through the resources available to him.

The district court also found that Patton's LSI-R score for risk of reoffending was at five on a six-point scale and that another evaluation placed him as needing the highest level of supervision. It is unclear whether those evaluations were done at the time of sentencing or for purposes of the probation revocation hearing.

At the probation revocation hearing, the State acknowledged that Patton was not a danger to the public when he was taking medication, but it stated its concern that he was not currently taking medication. The district court ultimately found that "the safety of the members of the public will be jeopardized if he remains on probation" and revoked Patton's probation.

*Standard of review*

Two standards of review are applicable to probation revocation cases. In determining whether a sanction was authorized by statute, we exercise de novo review, because statutory interpretation is a question of law. See *State v. Rocha*, 30 Kan. App. 2d 817, 819, 48 P.3d 683 (2002). If revocation is an allowable disposition under the statute, the decision whether to revoke is within the discretion of the district court and we will reverse only if the court abused that discretion. *Rocha*, 30 Kan. App. 2d at 819. A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of fact; or (3) it is based on an error of law. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

*Discussion*

Patton admitted violating his probation and acknowledged that he is subject to sanction. The facts adduced at the probation revocation hearing concerning Patton's use of drugs and failure to manage mental health issues could provide a reasonable basis for revocation. The issue here, though, is whether revocation, without imposing further intermediate sanctions, was allowable under K.S.A. 2016 Supp. 22-3716(c).

A district court's authority to revoke probation is limited by statute. The Kansas Legislature has defined a scheme of graduated sanctions a district court must impose on an individual prior to revoking probation. See K.S.A. 2016 Supp. 22-3716(c)(1)(A)-(E). However, a district court may revoke probation without first imposing intermediate sanctions if it "finds and sets forth with particularity the reasons for finding that the safety of members of the public will be jeopardized or that the welfare of the offender will not be served by such sanction." K.S.A. 2016 Supp. 22-3716(c)(9).

4

The particularized-findings element of the statute requires that: (1) the findings must be distinct, not general; (2) the findings must be stated with attention and concern to the details; and (3) the district court must link the reasons for its action with the risk to public safety if it does not impose a prison sentence. *State v. Huskey*, 17 Kan. App. 2d 237, 240, 834 P.2d 1371 (1992). We have alternately expressed the third prong as requiring the district court to "find and explain why public safety would be jeopardized . . . *by imposing an intermediate sanction.*" *State v. Wesley*, No. 111,179, 2015 WL 3868716, at *5 (Kan. App. 2015) (unpublished opinion). Caselaw interpreting the statute requires the district court to explicitly draw the connection between its factual findings and its conclusion that returning the offender to probation poses a threat to public safety. E.g., *State v. Miller*, 32 Kan. App. 2d 1099, 1102-03, 95 P.3d 127 (2004).

Here, the district judge made a large number of factual findings, concluding as follows:

> "Taking into consideration these findings and the Court's ongoing concerns, I am going to find that [Patton] is a risk to public safety, and that, specifically, the safety of the members of the public will be jeopardized if he remains on probation. And there are no other feasible alternatives in the Court's opinion."

In the journal entry, the district court referenced the offender welfare exception also. The journal entry states:

> "Court makes offender welfare and public safety findings based on the following:
> "1. Originally a departure.
> "2. Violent person crime with a firearm.
> "3. Per defendant's Motion for Departure—Due to defendant's mental health and drug addiction, Court made specific orders in Journal Entry of Judgment in regard to mental health and drug treatment.
> "4. Defendant has served two County Jail Sanctions due to drug use.
> "5. Defendant walked away from COMCARE treatment.

5

"Court finds that defendant needs more structure than Community Corrections Field Services can provide and imposes sentence."

Although the journal entry refers to the offender welfare exception, the district court did not make any finding at the hearing that Patton's welfare would not be served by the imposition of an intermediate sanction. The district court's ruling from the bench controls over the journal entry. Patton argues that the district court's finding that revocation was necessary on grounds of public safety was not supported by the record of his behavior on probation. He argues that the district court's findings did not meet the standards of K.S.A. 2016 Supp. 22-3716(c)(1).

The statute requires a district court to state an explicit link between its factual findings and its ultimate finding regarding public safety. The State suggests interpretations of the district court's ruling that might help show the necessary link. Specifically, it argues that the district court revoked Patton's probation "based upon a conglomeration of findings relevant to the larger issue of community safety." The State also argues that "defendant's violation cannot be viewed in a vacuum; rather it is part of a larger picture illustrating defendant's questionable psychological state." The State continues its interpretation: "[T]he court opted to remove defendant from the community when his violation indicated that he was *beginning to travel* the same non-medicated, unsupervised road that *possibly contributed* to violent behavior." (Emphasis added.)

We have previously rejected attempts by the State to provide interpretations of a court's findings to supply the missing link. E.g., *State v. Padgett*, No. 94,695, 2006 WL 3257450 (Kan. App. 2006) (unpublished opinion). In *Padgett*, the district court revoked probation after listing the defendant's problems and incident reports while at a correctional camp; it stated its view of the need for the probationer to satisfy all of his responsibilities and advised the defendant that sometimes revocation is "'a step that has to be taken as part of the process of correction and to get people on the right path.'" 2006

6

WL 3257450, at *1. After agreeing that the district court could have been "thinking along [the] lines" suggested by the State, we concluded that the ruling did not meet the particularity requirement because the court failed to say what it was thinking to establish a link. 2006 WL 3257450, at *2. We further stated that a court's expressed reasons should be "clear enough that we are not required to strain to interpret the court's words as complying with the statute." 2006 WL 3257450, at *2.

Here, Patton's drug use and mental health were the district court's primary concerns. Patton had three positive drug tests in 2016. At the probation revocation hearing, the district court stated that Patton's most recent use of illegal drugs occurred shortly after an outpatient drug treatment program and was a relapse, but "it does indicate an inability to deal with the substance abuse issues through the resources that have been provided and that [Patton] apparently is [un]willing to avail himself of."

Similar language was used in *State v. McFeeters*, 52 Kan. App. 2d 45, 362 P.3d 603 (2015), and we found it insufficient to establish a link. There, the district court revoked the defendant's probation because he did not go to substance abuse treatment. We found that the district court's remarks about the defendant's "apparent unwillingness or inability to conform his behavior to the requirements of probation" failed to explain *how* public safety would be jeopardized if the defendant remained on probation or how intermediate sanctions would fail to serve the defendant's welfare. 52 Kan. App. 2d at 49. We explained that any link that might exist was only implied and, thus, not sufficient to meet the particularity requirement of the statute. We concluded: "We will refrain from substituting our inferences for the district court's legally required explanations." 52 Kan. App. 2d at 49. Like here, the district court in *McFeeters* considered the defendant's LSI-R report. Even though this was a specific factual finding concerning likelihood to reoffend, we found that the district court did not expressly connect it to either of the statutory exceptions. 52 Kan. App. 2d at 49.

We also refused to supply a connection in *Miller*, where the district court revoked the defendant's probation after finding that he failed to report to court services and had used illegal drugs *daily* since being placed on probation. The district court observed that Miller "'was unable to make it from the courthouse to court services, a half block [before violating probation].'" 32 Kan. App. 2d at 1101. We held that the district court's mere recitation of the defendant's drug abuse—severe as it was—was insufficient because it did not explicitly draw what could be considered an obvious link to offender welfare and did not explain why a lesser sanction would not serve the defendant's welfare. 32 Kan. App. 2d at 1102-03.

The district court in *Miller* noted as part of its decision that the defendant had received a "'significant break'" by being granted a downward dispositional departure to probation. 32 Kan. App. 2d at 1101. Here, the district court's journal entry lists "departure sentence" as the first reason for revocation. We made clear in *Miller* that dispositional departure sentences are subject to the graduated sanctions system in K.S.A. 22-3716(c)(1). 32 Kan. App. 2d at 1101. Therefore, we reject the State's argument that the district court's prior leniency could support its decision on a probation revocation motion. But see K.S.A. 2017 Supp. 22-3716(c)(9)(B) (added to statute in 2017; no intermediate sanction required if probation was granted as a dispositional departure). The 2017 statutory amendment became effective after Patton's probation revocation hearing, and we will not apply the amendment in Patton's current appeal.

The district court here did not discuss intermediate sanctions, except to state that "there are no other feasible alternatives [to revocation]." This general statement falls short of the requirement to explain *how* imposition of an intermediate sanction would jeopardize public safety. It must be emphasized that "return to probation" does not necessarily mean allowing the defendant out on the streets. When a probation violation is found, the district court may sanction the defendant to a jail dip or a prison dunk. In this

8

case, Patton had served two jail dips, so the district court could have imposed a 120- or 180-day prison dunk as an alternative to revocation.

In other cases, we have found that the district court stated a sufficient nexus. One had facts similar to *Miller* but reached an opposite conclusion. *State v. Harding*, No. 110,677, 2014 WL 3630554 (Kan. App. 2014) (unpublished opinion). In *Harding*, the district court made factual findings that defendant, *inter alia*, violated his probation three days after sentencing by using cocaine; committed three other violations within 11 days; admitted using methamphetamine and probably had an addiction; and had numerous convictions for crimes of violence among his 36 or 37 convictions over his 30-year criminal history. The court then stated that defendant's criminal history and inability to comply with the rules of probation for "any period of time" rose to the level that he would be a threat to public safety and to himself. 2014 WL 3630554, at *5. We found this met the statutory requirement that the district court explain why public safety and offender welfare would be impacted if the defendant were returned to probation.

It was easy for us to find that the particularity and nexus requirements were met in *State v. Rogers*, No. 114,590, 2016 WL 7032242 (Kan. App. 2016) (unpublished opinion), *rev. denied* 306 Kan. 1329 (2017), where the district court expressly stated that it was making factual findings to show that the defendant's welfare would not be served by an intermediate sanction. Among its findings were that Rogers had violated probation four times in 20 months and that he engaged in "'continuous use of marijuana and other illegal drugs while on probation.'" 2016 WL 7032242, at *3. The crucial link was stated when the district court found that another intermediate sanction would "have no effect on or be of any benefit to Rogers." 2016 WL 7032242, at *3. The district court's findings in the instant case fall short of the specific expression of nexus in *Rogers*.

We lastly address Patton's argument that the district court's findings primarily concerned his crime of conviction and prior crimes and that his actions *while on*

9

*probation* did not provide a sufficient basis for revocation. Patton cites *State v. Gary*, 282 Kan. 232, 144 P.3d 634 (2006), for the proposition that the State is prohibited from using a defendant's conduct prior to sentencing as the basis for revoking probation. In *Gary*, the defendant committed a new crime after being convicted but before being sentenced. When he was later charged with the crime, the State moved to revoke his probation. In reversing the revocation, our Supreme Court reiterated that probation cannot be revoked unless the probationer commits a violation of a probation condition. 282 Kan. at 238. Because the defendant was not on probation at the time he committed the new crime, it was not a probation violation and it could not be the basis to revoke probation. 282 Kan. at 238.

Patton argues for an extension of *Gary*, specifically, that we should not permit acts prior to sentencing to be used as the basis for a public safety finding to justify revocation. We decline to reach this question, but note that many cases have considered a defendant's prior actions in determining whether there is a risk to public safety and whether the defendant's welfare would be served by remaining on probation.

In conclusion, the error here is not in the substance of the district court's decision, but rather in its expression. The district court failed to make the particularized finding of nexus between Patton's actions and a threat to public safety if he were sentenced to a prison dunk instead of his underlying sentence. While this result may be putting form over substance, K.S.A. 2016 Supp. 22-3716(c)(9) and the caselaw interpreting it require a stringent compliance with form.

Sentence vacated and case is remanded for resentencing to an intermediate sanction or for further findings of fact to support revocation of probation without imposing an intermediate sanction.